JOSEPH F. BLAUT, Appellant, *against* ERNST GABLER AND
CHARLES W. RODMAN, AS ASSIGNEE, &C., Respond-
ents.

(Decided April 1st, 1878.)

Under 2 R. S. 137, § 4, the question whether or not a sale of chattels was made
with intent to hinder, delay, or defraud creditors is one of fact which must be
submitted to the jury upon the evidence.

Although in the trial of an action wherein a sale is impeached as made with intent
to hinder, delay, or defraud creditors, the vendor, as a witness, may be asked
whether he had such intent in making the sale ; he may not be asked whether he
made the sale for any improper purpose ; as it leaves the question, Whether the
sale was for a proper or improper purpose to the conclusion formed by witness ;
nor can he be asked whether he gave the plaintiff to understand, in anything that
transpired between them, that the transaction was for an improper purpose, or to
defraud creditors, as it is asking the witness to give his conclusion as to the effect
of what occurred between them.

It will be assumed by the court upon appeal that exceptions taken at the trial and
not discussed upon the appeal, or placed upon the appellant's points, are con-
ceded by the latter to be untenable.

APPEAL by the plaintiff from a judgment of this court
entered upon a verdict, and from an order denying a motion
on the minutes for a new trial.

This action was brought by Joseph F. Blaut against
Ernst Gabler to recover nine pianos, or their value, which
pianos were alleged in the complaint to belong to plaintiff,
and to have been wrongfully taken by the defendant from
the plaintiff's possession. The defence set up by Gabler, and
by Charles Rodman, as assignee for the benefit of creditors of
Arnold Strauss, ordered upon his own application to be made
a party defendant, was that the pianos were the property of
Rodman by virtue of a general assignment of Strauss, their
former owner, and were taken from Gabler, who held them
as the bailee of Rodman. The answers contained a general
denial.

Upon the trial there was conflicting evidence as to the
ownership of the pianos, the evidence for the plaintiff being
to the effect that he bought the pianos of Strauss shortly be-

fore the assignment for a note of $2000 made by one George Kuhn, and the evidence for the defendants being to the effect that the sale to Gabler was made with intent to hinder, delay, and defraud creditors. This question of fraudulent intent was submitted to the jury, who found against the plaintiff. Upon the direct examination of Strauss, called as a witness for plaintiff, he was asked, " Was this transfer of pianos from you to Mr. Blaut done for any improper purpose ? " This was objected to as not being a question as to fact. The objection was sustained, and an exception was taken by plaintiff. The witness was then asked, " Had anything transpired between Blaut and yourself—conversation or otherwise—whereby you gave him to understand, or whereby it was understood, that the transaction was for an improper purpose, or the purpose of defrauding your creditors ? " To this question there was the same objection made, and the objection was sustained.

*Otto Horwitz*, for appellant.

*Rodman & Adams*, for respondents.

CHARLES P. DALY, Chief Justice.—The question whether the sale of the pianos to the plaintiff was made with intent to hinder, delay, or defraud creditors was, under the statute (2 R. S. 137, § 4), a question of fact and not of law, which the court was bound to leave to the jury, and the plaintiff's motion for judgment at the close of the defendant's evidence was properly denied.

If there is no evidence showing, or tending to show, such a fraudulent intent, the verdict of the jury will, of course, be set aside, and a new trial ordered. But this is not such a case. There was not only ample evidence, but in my opinion the verdict of the jury was right.

It was a sale by a debtor who was about to fail, and who did fail three weeks afterwards, owing debts to the amount of $16,000, with assets amounting to only $800, made to an intimate friend for a worthless note, which the buyer even did

not endorse; and the whole transaction shows that it was an attempt, on the part of the debtor Strauss, with the co-operation of the plaintiff, to prevent the property, ostensibly sold to the plaintiff, from being applied to the satisfaction of Strauss' debts, under the voluntary assignment which he made shortly afterwards.

The jury, evidently, did not believe the testimony either of the debtor Strauss, or of the plaintiff, so far as they respectively made statements to show that the sale was *bona fide;* and the jury were entitled to discredit the evidence of each. The plaintiff was contradicted upon two material points. He swore that he paid the first month's rent of the room over a lager beer saloon, where the property was stored, after the alleged sale, and Schick, the proprietor of the saloon, swore that on the contrary it was paid to him by the judgment debtor. The plaintiff swore that after the alleged sale, and before the seizure of the property, he went several times to the room to show the pianos to customers, or to see that the pianos were all there in good shape, and whether they were well covered; that he went there four or five times, and that after being in the room he went down and saw Schick, the landlord, and that he saw him, he supposed, almost every time he went there; the whole of which Schick denied. Schick not only testified that this statement was untrue, but that the plaintiff could not have been at the room without his (Schick's) hearing of it; and that when the plaintiff came to see him, after the seizure, with an offer to pay the rent, he had to ask him who he was, as he did not know him. The plaintiff was, therefore, not only contradicted in these statements by a disinterested witness, but his statements also that he took the note of Kuhn, which he gave for the pianos, because he wanted to get it discounted; that the maker Kuhn was a man doing a large business and in good credit, whose note he (the plaintiff) knew could be discounted at any time in the German Exchange Bank, was contradicted by evidence of the most satisfactory kind. It was shown by evidence given after the testimony of the plaintiff, that Kuhn, when the note was made, was a broken

down mechanic, unable to pay his debts, having unsatisfied judgments against him of long standing amounting to more than $30,000, some of which extended as far back as 1873, and who, when he was examined upon the trial, was living in the second story of a house in Harlem, in the lower part of which his wife kept a small candy shop. All that Kuhn could say, when these judgments were shown to be existing against him, was that he did business in his own name notwithstanding these judgments, and did not owe a dollar to the bank, but had a balance in it to his favor of 70 cents. The jury, evidently, did not believe that a man in this situation was one in good credit, whose note at that time could be discounted in a bank for $10,000 ; and, consequently, that the plaintiff's statement was false that he knew that it could be. The very fact of giving a note, made by a man in such a situation, which the plaintiff declined to endorse, although receiving, as he alleges, full value for it, and which the defendant was willing to take for the pianos, without the endorsement of the buyer, was sufficient, of itself, to show the nature of the transaction. There was, in addition to this, the manner in which the property was removed to a room over a lager beer saloon, hired and paid for by the alleged vendor, who with his clerk superintended the removal of it; the instruction of the clerk to the landlord, after the pianos were put in the room, that he should hang something in front of the glass door so that people should not look in ; and the plaintiff's statement to the carman, Schwehm, after the seizure of the pianos, that he would like to settle the matter in an easy way *for Strauss*, the judgment debtor, shows very clearly that the whole transaction was a cover to secure the pianos for his friend Strauss, who was then insolvent and unable to pay his debts. Strauss having, before that time, asked an extension from his creditors, and made an assignment three weeks afterwards of property, the value of which was $800, to meet obligations amounting to $16,000, it was, in my judgment, a palpable case of a sale designedly made with an intent to hinder, delay, and defraud creditors, alike on the part of Strauss and the plaintiff, as the jury found it to be.

With respect to the exceptions taken, it will be necessary only to pass upon those which have been discussed upon the appeal, or placed upon the appellant's points, as it will be assumed that the others are conceded by the appellant to be untenable.

The plaintiff was not entitled to the instruction asked, that there was nothing in the testimony to show that the plaintiff knew that Strauss was insolvent or in embarrassed circumstances, or that he or Strauss knew that the note was not worth its full value. It was equivalent to requesting the judge to ignore the whole of the testimony relied upon as showing, and which, in my opinion, did show, the fraudulent intent, and was therefore properly refused.

Where a sale is impeached by evidence tending to show that it was made with a fraudulent intent to hinder or delay creditors, the alleged fraudulent vendor may undoubtedly be asked in general terms whether he had such an intent (*See-mour* v. *Wilson*, 14 N. Y. 567). But the question asked and ruled out involved much more than this. The first question asked of Strauss was, whether the transfer of the pianos was for any improper purpose, leaving the question of what was a proper or improper purpose to the witness. The next question asked was not whether the sale was made with the intent which the statute declares shall avoid the sale, but it was a question with which the former one was complicated. It did not ask for a simple statement whether the debtor had any fraudulent intent or not, but for his conclusion as to what he gave the plaintiff to understand in anything that transpired between him and the plaintiff, in conversation or otherwise, that the transaction was for an improper purpose or for the purpose of defrauding Strauss' creditors.

In my judgment the evidence is so satisfactory and conclusive as to the fraudulent intent with which this sale was made, that it would make no difference what either the plaintiff or Strauss should say in respect to their intent, as the jury evidently did not believe the testimony of either of them. Their intent was evident from the evidence of the whole transaction, and what Blaut or Strauss might swear

to respecting their intent, would, in my judgment, have added nothing to their credibility.

The judgment should be affirmed.

VAN HOESEN, J.—I concur in all the views expressed by the Chief Justice in his opinion, and am in favor of affirming the judgment, because, in my opinion, none of the exceptions are well taken.

LARREMORE, J., also concurred.

Judgment affirmed.